**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**STEPHEN LATHROP,**

**Plaintiff,**

**v.**

**JUNEAU & ASSOCIATES, INC. P.C.,
JOE JUNEAU, individually and in his
official capacity as City Engineer of
Granite City, Illinois, ED JUNEAU,
CHARLIE JUNEAU, DAN BROWN,
individually and in his official
capacity as Economic Director of
Granite City, Illinois, RONALD SELPH,
individually and in his official capacity
as Mayor of Granite City, Illinois,
MARK SPENGLER, individually and in
his official capacity as City Attorney of
Granite City, Illinois, GRANITE CITY
OF ILLINOIS, and OTHER UNNAMED
PERSONS**

**Defendants.**                         **No. 03-CV-0194-DRH**

**<u>AMENDED ORDER</u>**

**HERNDON, District Judge:**

**I.  <u>Introduction</u>**

Before the Court is the summary judgment motion and supplement

submitted by Defendants City of Granite City, Illinois, Ronald Selph, Dan Brown, and

Mark Spengler (collectively, the "Granite City Defendants") (Docs. 158, 181). *Pro se*

Plaintiff Stephen Lathrop has filed a response (Doc. 200) along with exhibits, portions of which the Granite City Defendants move to strike (Doc. 206). *Pro se* Plaintiff Stephen Lathrop brought this action alleging that all named Defendants wrongfully undermined his construction agreement with the City of Granite City because his project conflicted with another construction venture in which all Defendants had a legal or illegal interest (Doc. 109, Amended Complaint).  The Granite City Defendants seek summary judgment as to all of the counts in Plaintiff's amended complaint (Docs. 158, 181).  For the following reasons, the Court **GRANTS in part** and **DENIES in part** the Granite City Defendants' summary judgment motion and supplement (Doc. 158, 181).

## II. <u>Background</u>

Plaintiff Stephen Lathrop filed his original complaint on March 25, 2003.  The Court granted in part and denied in part Defendants' motions to dismiss and/or strike the original complaint (Docs. 65, 66), and Plaintiff then filed an amended complaint after obtaining leave (Doc. 109, Amended Complaint).  The amended complaint alleges that Juneau & Associates and its owners, Joe Juneau, Ed Juneau, and Charlie Juneau, overpriced Granite City for construction projects that were obtained by bribing city officials with kickbacks (Doc. 109 ¶¶ 1-3).  Plaintiff claims that Defendants' kickback scheme injured him when Defendants purposefully undermined his pending Dobrey Slough construction agreement with Granite City

2

because the project conflicted with one of Juneau & Associates' construction projects

(*id.*).

The Individual Parties to this suit are as follows:

1. Plaintiff Stephen Lathrop is a contractor in Granite City, Illinois.
2. Defendant Juneau & Associates is a private engineering firm contracted to serve as city engineer for several municipalities.
3. Defendant Joe Juneau is Granite City's civil engineer and an owner of Juneau & Associates.
4. Defendants Ed Juneau and Charlie Juneau are owners of Juneau & Associates.
5. Defendant Dan Brown is Economic Advisor for Granite City.
6. Defendant Ronald Selph is Mayor of Granite City.
7. Defendant Mark Spengler is City Attorney for Granite City.

(Doc. 109 ¶¶ 6-14).  The Court will refer to Defendants Juneau & Associates, Joe

Juneau, Ed Juneau, and Charlie Juneau collectively as the "Juneau Defendants."

The Court will refer to Defendants the City of Granite City, Dan Brown, Ronald

Selph, and Mark Spengler collectively as the "Granite City Defendants."

In the 1990s, Plaintiff proposed a construction project that would have

provided flood control measures and a housing development for the Dobrey Slough

area in Granite City, Illinois (Doc. 109 ¶¶ 31, 38).  During meetings held in 1997 and

1998, Plaintiff met with Alderman Kim Hess and Defendants Dan Brown (Economic

Advisor) and Joe Juneau (City Engineer) to discuss the need for implementing his

flood control measures for Dobrey Slough (Doc. 109 ¶¶ 38-39).  At some point,

Plaintiff also explained that Juneau & Associates' construction project at the nearby

DonnaLynne subdivision would worsen Dobrey Slough's flooding problems (Doc. 109

3

¶ 40).[1]  Although the amended complaint is unclear on this point, Plaintiff, through his company Ramm Development, Inc., apparently completed a "Pre-Annexation Agreement" with Granite City in January 1998 (Doc. 109 ¶ 90).

In the spring of 2000, Granite City Aldermen held an Economics and Downtown Planning Committee Meeting at which Defendant Joe Juneau presented the DonnaLynne proposal (Doc. 109 ¶ 39).  Mayor Ronald Selph advised the Aldermen to authorize an agreement with Juneau & Associates (the "DonnaLynne agreement") without the Aldermen ever actually seeing the agreement (Doc. 109 ¶¶ 46, 51).  The Mayor allegedly misrepresented that the project would cost the city only $80,000 which would be repaid within seven years even though the DonnaLynne agreement stipulated that the project would cost the city at least $800,000 which would not be reimbursed (Doc. 109 ¶¶ 46, 51, 52).  In addition, Defendants allegedly circumvented a number of necessary procedural steps by having the Mayor present the DonnaLynne proposal directly to the Aldermen without prior review (Doc. 109 ¶ 50).

In September of 2000, Plaintiff found financier Don Balsters who agreed to partner with Plaintiff and finance Plaintiff's Dobrey Slough project (Doc. 109 ¶ 85).  Plaintiff and Balsters met with Granite City's Economic Committee that same month and made some progress towards city approval of Plaintiff's project (*id.*).  But the day

---

[1] The US-Army Corps of Engineers eventually determined that the drainage plan of Juneau & Associates' DonnaLynne project was inadequate and forced Granite City to construct a $1.8 million drainpipe from the DonnaLynne subdivision to Horseshoe Lake (Doc. 109 ¶ 76).

after this meeting Balsters withdrew his support of Plaintiff's plan allegedly due to Defendants Dan Brown and Joe Juneau's misrepresentations that Granite City could neither afford nor support Plaintiff's project (Doc. 109 ¶¶ 86, 87).  Plaintiff claims these misrepresentations were made for the purpose of undermining his project and thereby protecting Defendants' project (Doc. 109 ¶ 88).

In late 2001, Plaintiff found another financier and potential backer in Kent Kehr (Doc. ¶¶ 89-90).  Plaintiff and Kehr met with Granite City's Economic Committee on December 4, 2001, and apparently made significant progress towards city approval of Plaintiff's project, including passage of a resolution requiring the Mayor to honor Plaintiff's "Pre-Annexation Agreement" from January 1998 (Doc. 109 ¶¶ 91-92). On March 19, 2002, Kehr presented to the Economic Committee a written development proposal for Plaintiff's project (Doc. 109 ¶ 92).  But on March 26, 2002, Defendant Dan Brown allegedly telephoned and informed Kehr in a rude manner that the Mayor's office would not approve the proposal unless it contained additional information, including the name of the tenant that would be locating at the site (Doc. 109 ¶ 93).   The amended complaint does not state whether the additional information noted by Brown was actually required by ordinance or statute.  The amended complaint appears to suggest that the alleged conversation led Kehr to withdraw his financial support for Plaintiff's project (Doc. 109 ¶ 94).  Plaintiff claims Brown made these representations to Kehr for the purpose of undermining Plaintiff's project and thereby protecting Defendants' project (Doc. 109 ¶ 88).

Beginning on April 9, 2001, Plaintiff began to investigate Juneau &

5

Associates' DonnaLynne project and made requests for certain documents (Doc. 109 ¶¶ 98-99). Although Plaintiff received a copy of the contract agreement establishing Juneau & Associates' DonnaLynne project, he claims he did not receive other requested documents but does not mention what the other requested documents were (Doc. 109 ¶ 99).

On April 16, 2002, Plaintiff and his then attorney addressed the Granite City Finance Committee (Doc. 109 ¶ 101). Plaintiff stated that Defendants had blocked his project in various ways in order to protect their Dobrey Slough project (Doc. 109 ¶ 101). The Finance Committee then unanimously passed a motion to have Plaintiff and his attorney meet with the Granite City Attorney to work out a settlement (Doc. 109 ¶ 102).

After May 8, 2002, Plaintiff again began to investigate the Defendants' project (Doc. 109 ¶ 106). Plaintiff claims that City Treasurer Gail Valle, City Clerk Judy Whitaker, Comptroller Greg McCalley, and Defendant City Engineer Joe Juneau denied Plaintiff's request for documents concerning Defendants' DonnaLynne project (Doc. 109 ¶¶ 106-12). The reason given for each denial was that the documents related to pending litigation (*id.*).

Plaintiff's amended complaint also alleges that the sale of land at 1733-1745 State Street, Granite City, Illinois, on September 19, 2000, from Granite City to eight individuals for the price of $1 in order to lease the land to a non-profit corporation constituted a fraud (Doc. 109 ¶¶ 132-48). Plaintiff alleges that Dan Brown knew of prior offers for more but recommended the land be sold for $1, to

6

which the Economic Committee consented (Doc. 109 ¶¶ 132-34).  Plaintiff suggests,

"This sale warrants further investigation," (Doc. 109 ¶ 132), but gives no explanation

of the relation between this land sale and other allegations in Plaintiff's complaint.

Plaintiff's amended complaint asserts the following claims against

Defendants (Doc. 109)[2]:

> 1. RICO violations of **18 U.S.C. § 1962(c)** – premised on predicate acts involving (1) violations of federal laws on bribery, wire fraud, mail fraud, obstruction of justice, and other unlisted matters and (2) violations of state laws on bribery, fraud, defamation, and other unlisted matters (¶¶ 159-64);
> 2. RICO violations of **18 U.S.C. § 1962(c) and (d)** – premised on the same predicate acts as above (¶¶ 165-70);
> 3. RICO violations of **18 U.S.C. § 1962(a) and (d)** – premised on the same predicate acts as above (¶¶ 171-74);
> 4. RICO violations of **18 U.S.C. § 1962(b) and (d)** – premised on the same predicate acts as above plus fraud under 18 U.S.C. § 1342 and "related fraudulent defamatory under U.S.C. §§ 1961(1), 1961(5), and 1962(b)" (¶¶ 175-78);
> 5. Tortious interference with prospective business relations (¶¶ 179-81);
> 6. Defamation (¶¶ 179-180);
> 7. Civil Conspiracy (¶¶ 182-88);
> 8. Violations of state and federal freedom of information acts (¶¶ 189-91); and
> 9. Violations of state and federal anti-trust laws (¶¶ 192-205).

In relation to the RICO claims, the amended complaint designates two RICO

enterprises: (1) the "Juneau & Associates, Inc. P.C." (also called the "Juneau

Enterprise") composed of the Juneau Defendants and (2) the "Juneau–Granite City

Engineering Enterprise" composed of all Defendants (Doc. 109 ¶¶ 17-30).  Also,

---

[2] The Juneau Defendants assert that this recitation conflicts with that which is contained in an order authored by Magistrate Judge Cohn, see Doc. 175, but the Court disagrees, in that, said order only sets out causes of action for the purpose of trying to marshal discovery and is not dispositive of the issues.  In any event, said order is not controlling in these matters.

Plaintiff's RICO claims are premised only on allegations of "a pattern of racketeering activity" (Doc. 109 ¶¶ 159-78) and not on "collection of an unlawful debt." The relief sought includes compensatory damages, punitive damages, equitable relief, and attorney's fees and costs (Doc. 109, Prayer for Relief ¶¶ 1-8).

The Granite City Defendants filed this summary judgment motion on August 6, 2004, (Doc. 158) along with a supplement on November 23, 2004 (Doc. 181). Plaintiff filed an initial response to the motion on September 9, 2004 (Docs. 171). On realizing all named Defendants' failure to issue *pro se* Plaintiff a ***Timms*** notice, the Court itself issued a notice and granted Plaintiff leave to file an additional response (Doc. 197). Plaintiff subsequently filed a single response to the Juneau Defendants' and Granite City Defendants' separate summary judgment motions along with volumes of transcripts, affidavits, and videotapes (Doc. 200). In turn, the Granite City Defendants filed a motion to strike portions of Plaintiff's evidence submitted in opposition (Doc. 206).

### III.  Analysis

#### A.  Summary Judgment Standard

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** ***Oats v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v.***

*Catrett*, **477 U.S. 317, 322 (1986)**).  The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. ***Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323)**.  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. ***Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))**. Also, given Plaintiff's *pro se* status, the Court must apply a liberal construction to his pleadings.  ***See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001)(citing *Hishon v. King & Spalding*, 467 U.S. 69 (1984)); *Mallet v. Wisc. Div. of Vocational Rehab.*, 130 F.3d 1245, 1248 (7th Cir. 1997)**.

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings.  "[P]laintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment." ***Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997)**.  Further, Plaintiff's own subjective belief does not create a genuine issue of material fact. ***Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997)**. Rather, the non-moving party must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324)**.

9

Evidence submitted in response to a summary judgment motion "must be competent evidence of a type otherwise admissible at trial. Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment." **Bombard v. Fort Wayne Newspapers, Inc.**, 92 F.3d 560, 562 (7th Cir. 1996); Fed. R. Civ. P. 56(e).

In reviewing a summary judgment motion, the court does not determine the truth of asserted matters but rather decides whether there is a genuine factual issue for trial. **Anderson, 477 U.S. at 249**. The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to show a genuine issue of material fact." **Weeks, 126 F.3d at 933 (7th Cir. 1997)(citing Anderson, 477 U.S. at 252)**. No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." **Anderson, 477 U.S. at 249-50 (citations omitted)**; **accord Starzenski v. City of Elkhart, 87 F.3d 872, 880 (7th Cir. 1996); Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994)**. Though a district court must be considerate in construing a *pro se* litigant's pleadings, "this does not mean that the court, in considering materials filed in opposition to a motion for summary judgment, should overlook the requirement of Federal Rule of Civil Procedure 56(e) that affidavits be made on personal knowledge and set forth facts as would be admissible in evidence." **Reed v. Richards, 1994 WL 259442, *3 (7th Cir. 1994)**.

10

This is especially true when a *pro se* Plaintiff has received a ***Timms*** notice setting forth **RULE 56(e)**'s evidentiary requirements.

### B.  RICO

### 1.  Predicate Acts

The Granite City Defendants have challenged all of Plaintiff's alleged predicate acts that support his RICO claims (Doc. 158, p. 6-11; Doc. 181, p. 3-12). In response, Plaintiff only argues in support of the following alleged predicate acts: wire/mail fraud (Doc. 200, p. 12-13); bribery (Doc. 200, p. 16); "wetland fraud scheme" (Doc. 200, p. 17); obstruction of justice (Doc. 200, p. 18-19); and defamation (Doc. 200, p. 20).  The Court understands Plaintiff to have conceded Defendants' arguments as to those predicate acts not addressed in Plaintiff's response. **See FED. R. CIV. P. 56(e); *see also United States v. Jones*, 224 F.3d 621, 624 (7th Cir. 2000)(stating "[a]rguments that are not adequately developed or supported are waived").**

First, the Court determines Plaintiff has set forth sufficient facts to support his allegation that Defendants committed the predicate act of wire fraud. Wire fraud constitutes a "racketeering activity" under RICO.  **18 U.S.C. § 1961(1).** As agreed upon by the Parties, to establish wire fraud a plaintiff must show "(1) the defendants' participation in a scheme to defraud; (2) the defendants' intent to

defraud; and (3) the defendants' use of the . . . wires in furtherance of the fraudulent scheme." *United States v. Ross*, **77 F.3d 1525, 1542 (7**[th] **Cir. 1996)**.  Here, Plaintiff meets the first requirement by alleging Defendants participated in a scheme to defraud through which they wrongfully undermined Plaintiff's Dobrey Slough business venture by fraudulently deterring his financier.  Plaintiff complies with the second requirement since he claims Defendants' fraud was intentional, i.e., specifically intended for the purpose of protecting the DonnaLynne project.  Lastly, Plaintiff alleges Dan Brown furthered this scheme by use of the wires, specifically when Brown telephoned Plaintiff's financier Kehr on March 27, 2002, and made allegedly false demands so as to deter Kehr from supporting Plaintiff's project.

The Granite City Defendants make no contention that Brown did not call Kent Kehr on March 27, 2002.  Supporting the alleged subject of this conversation is Kent Kehr's letter to the City Counsel, which the Granite City Defendants do not move to strike (Doc. 200, p. 9)(quoting "Kent Kehr's Letter of March 28, 2002").  In the letter, Kehr claims Brown told him over the phone "that the city did not want to sell the property . . . because the city wanted to control who located on the site." (Doc. 200, p. 9)(quoting "Kent Kehr's Letter of March 28, 2002").  In addition, Plaintiff notes Glenn Hollis' Affidavit which states,  "Brown told me words to the effect that he had just knocked the legs out from under Lathrop's project . . . [because] '[they] don't need the competition with DonnaLynne.'" (Doc. 200; Affidavit of Glenn Hollis ¶ 6).  While Brown's statement may relate to any earlier encounter with financier Balsters, this statement and the undisputed phone call to Kehr

demonstrate sufficient evidence to show a dispute of material fact as to whether the intended scheme to defraud was furthered by Brown's telephone call to Kehr. Despite the Granite City Defendants' hearsay objection (Doc. 206, p. 5), the particular quotation from Hollis' affidavit is admissible.  First, Hollis' affidavit sets forth personal knowledge since he claims he personally heard Brown make this statement.  Second, Brown's statements noted by Kehr and Hollis are exceptions to the hearsay rule since they constitute an admission by a party-opponent under **FEDERAL RULE OF EVIDENCE 801(d)(2)**.

Second, the Court finds Plaintiff has failed to show a dispute of material fact concerning the alleged predicate act of bribery.  The Granite City Defendants argue the record lacks any evidence of bribery (Doc. 158, p. 7).  In response, Plaintiff points generally to "tendered evidence #23" (a 109-page exhibit) as evidence that in exchange for advancing the DonnaLynne project Defendants Mark Spengler and Joe Juneau received bribes consisting of lots at reduced rates in the DonnaLynne subdivision (Doc. 200, p. 16).  First, it is nonsense to suggest Joe Juneau received a bribe.  While Joe Juneau was susceptible to bribery by virtue of his position as city engineer, he was also the head of the DonnaLynne project (or at least his company was).  To suggest that Joe Juneau received a bribe as an official would mean he bribed himself in attempt to curry favor with himself so as to advance his own project.  Such a suggestion is absurd.  Second, the evidence submitted in Exhibit 23 gives no suggestion of bribery (Doc. 200, Ex. 23).  On reviewing this 109-page exhibit, the only documents evidencing sales were memoranda in which Joe Juneau asked

13

Mayor Ronald Selph whether funds for the city and developers could be provided by specified dates.  (Doc. 200, e.g., Ex. 23 "Memorandum of June 21, 2000").  Also, the only relevance these documents have to Mark Spengler is that he was sent copies (Id.).  The documents give no suggestion that Mark Spengler or even Joe Juneau bought land, let alone at a reduced rate.  Furthermore, Mark Spengler's deposition shows that he never in fact bought a lot in the DonnaLynne subdivision.  (Spengler Dep. p. 44-45).  If Plaintiff had some other portion of the 109-page exhibit in mind, he should have noted it specifically.

Third, the Court determines that Plaintiff's referenced "Wetland Mitigation Fraud Scheme" does not constitute a predicate act on which his RICO claims may be based.  A party may bring a RICO action based only on "racketeering activity."  **18 U.S.C. §§ 1962, 1964(c)**.  "Racketeering activity" is defined as certain listed federal crimes and violations of state laws concerning "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in controlled substance or listed chemical," and listed federal crimes.  **18 U.S.C. § 1861(1).**  A practice can only be a "racketeering activity" if "it involve[s] one or more of the crimes listed in § 1961(1)."  ***Emery v. American General Finance, Inc.*, 71 F.3d 1343, 1345 (7th Cir. 1995); *Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999)(holding that list of offenses constituting RICO racketeering acts is exhaustive), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000); *see also Titan Int'l, Inc. v. Becker*, 189 F. Supp. 2d 817, 825-26 (C.D.**

Ill. 2001)(**Scott, J.**).  In this case, the only wrongful act that might be referenced in the "Wetland Fraud Scheme" is the intentional tort of fraud generally (Doc. 109, p. 20-23; Doc. 200, p. 17-18).  While several specific and unique types of fraud may constitute predicate offenses under **§ 1961**, e.g., identity fraud, mail fraud, wire fraud, financial institution fraud, etc., the general intentional tort of fraud is not included as a "racketeering activity" in **§ 1961(1)**.  **18 U.S.C. § 1961(1);  *see also Zolfaghari v. Sheikholeslami*, 943 F.2d 451, 453 (4th Cir. 1991)(stating that common law fraud does not constitute a predicate act under § 1961)**.

Fourth, the Court finds that no evidence supports the suggestion that the alleged predicate act of "obstruction of justice" ever occurred.  Although Plaintiff admits and cites case law contrary to his position, he suggests Defendants' false affidavits filed in *this suit* sufficiently establish obstruction of justice (Doc. 200, p. 18-19).  The Court agrees with the reasoning in Plaintiff's cited case as to why events in the instant action cannot constitute predicate acts in this suit.  ***Special Purpose Accounts Receivable  Co-Op Corp. v. Prime One Capital Co., LLC*, 202 F. Supp. 2d 1339, 1351-52 (S.D. Fla. 2002)(Gold, J.)**.  Furthermore, it would be nonsensical to permit a plaintiff to file a suit so as to create a predicate act on which that same suit might then subsist.  Courts function to administer justice, not to entrap defendants in otherwise nonexistent crimes.

Fifth, Plaintiff's allegations of defamation cannot constitute a predicate act under RICO.  Again, a practice can only be a "racketeering activity" if "it involve[s]

one or more of the crimes listed in § 1961(1)."  **Emery v. American General**

**Finance, Inc., 71 F.3d 1343, 1345 (7ᵗʰ Cir. 1995)**.  Defamation is not listed as a

"racketeering activity" under **§ 1961(1)**.

In summary, the only predicate act on which Plaintiff could possibly

base his RICO claims is Dan Brown's alleged wire fraud on March 27, 2002.

### 2. Pattern of Racketeering Activity

The Granite City Defendants also argue that all of Plaintiff's RICO claims

must be dismissed because there is no evidence Defendants committed any

racketeering activity, let alone a "pattern of racketeering activity," which is necessary

to prevail on any RICO claim (Doc. 158, p. 6-11; Doc. 181, p. 3-6).[3]  While Plaintiff

argues in support of his standing generally, Plaintiff's argument does not specifically

address the requirement that a "pattern of racketeering activity" be shown.

---

[3] In the original order of March 31, 2005, the Court construed the Granite City Defendants'
argument as invoking the purported failure to show a racketeering activity or pattern only with
regard to Plaintiff's § 1962(c) claim in Count 1, not with regard to Plaintiff's additional RICO
conspiracy claims (Doc. 219, p. 16).  That impression was based on the fact that in their first
summary judgment motion the Granite City Defendants only argued as to the lack of predicate acts
under the heading "There is No Genuine Issue of Material Fact as to the § 1962(c) Claims (Count
1)" (Doc. 158, p. 6).  While they argued for summary judgment as to the conspiracy RICO claims in
Counts 2, 3, and 4, and made the general claim that Plaintiff could not satisfy the requirements of
this statute, the only specific argument the Granite City Defendants appeared to assert was that
Plaintiff could not show he suffered damages (Doc. 158, p. 11-12).  In their supplement, the
Granite City Defendants' did specifically argue that racketeering activity or a pattern of
racketeering activity was absent, but they cited only § 1962(c) (Doc. 181, p. 5).

On a second review of the Granite City Defendants' summary judgment supplement, the
Court realizes that one could reasonably understand the broader language in the Granite City
Defendants' supplement as arguing that the absence of racketeering activity or pattern of
racketeering activity requires summary judgment as to all RICO claims.  Therefore, in this
amended order, the Court will consider this argument within the context of all of Plaintiff's RICO
claims.

The Court determines Plaintiff has not submitted evidence of a pattern of racketeering activity sufficient to support his **§ 1962(c)** RICO claim in Count 1. Section 1962(c) makes it "unlawful for any person employed by or associated with any [RICO] enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." **18 U.S.C. § 1962(c)**. A "pattern of racketeering activity" requires a showing of "at least two acts of racketeering activity." **18 U.S.C. § 1961(5)**. Here, Plaintiff has been able to show evidence of only one predicate act, i.e., Brown's alleged wire fraud. *See supra* **Part.III.B.1**. Consequently, Plaintiff has failed to meet **§ 1962(c)**'s requirement of showing that at least two predicate acts occurred.

Additionally, the Court determines Plaintiff has not provided evidence sufficient to support his RICO claims in Counts 2, 3, and 4, all of which assert **§ 1962(d)** conspiracies. To properly assert a RICO conspiracy claim under § 1962(d), a plaintiff does not have to prove that a pattern of racketeering activity actually occurred as required under RICO's substantive provisions in **§ 1962(a)–(c)**. *Salinas v. United States*, **522 U.S. 52, 63 (1997)(stating that an overt act does not have to proven for purposes of a RICO conspiracy)**; *Slaney v. Int'l Amateur Athletic Fed'n*, **244 F.3d 580, 600 (7th Cir. 2001)(stating that the target of § 1962(d) is not the actual violation of RICO's other substantive violations)**. However, a plaintiff must still prove that the defendants agreed to "further an

endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." ***Salinas*, 522 U.S. at 65; *Slaney*, 244 F.3d at 600 (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998))**. Therefore, if a plaintiff is to prove a RICO conspiracy which is not based on collection of an unlawful debt, he must show that the defendant agreed to further an endeavor that would result in a "pattern of racketeering activity," or "at least two acts of racketeering activity." **18 U.S.C. § 1962(a)-(c); 18 U.S.C. § 1961(5); *Slaney*, 244 F.3d at 600**. Establishing a potential "pattern" requires showing "a combination of qualities or acts forming a consistent or characteristic arrangement." ***United States v. Kaye*, 556 F.2d 855, 860 (7th Cir. 1977)(quoting *United States v. White*, 386 F. Supp. 882, 883-84 (E.D. Wisc. 1974)); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985)(suggesting a "pattern" requires a continuity of acts in combination with an interrelationship between those acts)**. In this case, Plaintiff has not pleaded that Defendants collected an unlawful debt and cannot prove that the Defendants' agreed endeavor, the DonnaLynne subdivision, would have resulted in a substantive RICO violation. First, since Plaintiff alleges that Defendants' RICO conspiracy was actually effected, Plaintiff should be able to point to actual predicate acts that constitute a pattern of racketeering activity. However, Plaintiff has attempted and failed to prove that Defendants committed more than the single predicate act of wire fraud. Second, assuming *arguendo* that portions of Defendants' alleged conspiracy went unexecuted, nothing in Defendants' plan to build

the DonnaLynne subdivision suggests that a "pattern of racketeering activity" (or continuous and interrelated racketeering activities) would have resulted from the plan's completion.

In summary, the Court concludes that Plaintiff has not proffered evidence sufficient to show a pattern of racketeering activity occurred or would have occurred. Consequently, the Granite City Defendants are entitled to summary judgment on Plaintiff's RICO claims in Counts 1, 2, 3, and 4.

### C. Defamation

The Granite City Defendants argue that no evidence supports Plaintiff's defamation claims (Doc. 158, p. 4). In response, Plaintiff states only that he "is entitled to the reasonable inference from the evidence that Defendant Brown made a pattern and practice [of] regularly defaming the Plaintiff (see Hollis Affidavit ¶¶ 5 & 6)" (Doc. 200, p. 20). In the cited portion of Hollis' affidavit, only the following statements could be construed as defamatory: (1) Plaintiff "was not a very good builder" and (2) Plaintiff "did not know what he was doing" (Doc. 200, Ex. 4 Hollis Affidavit ¶¶ 5 & 6).

The Court finds that these two statements do not support a defamation action. In Illinois, "[e]xpressions of opinion are protected from defamation claims while statements of fact are actionable." ***Barakat v. Matz*, 648 N.E.2d 1033, 1041 (Ill. App. Ct. 1995)**. Determining "whether an alleged defamatory statement is a statement of fact or opinion is a question of law." ***Brennan v. Kadner*, 814 N.E.2d**

**951, 957 (Ill. App. Ct. 2004)**.  This determination requires the court to "consider the totality of the circumstances and whether the statement can be objectively verified as true or false." *Barakat*, **648 N.E.2d at 1041.**  "[R]hetorical hyperbole cannot reasonably be construed as stating a fact and thus is not actionable as defamation." *Id.*  In particular, an expressed opinion that someone is "not very good" at their occupation is so vague and evasive of being proven true of false that it cannot support a defamation claim. *Sullivan v. Conway*, **157 F.3d 1092, 1097 (7th Cir. 1998)(holding that the statement "[John Doe] is a very poor lawyer" is not an actionable defamatory comment)**.  In this case, the statements that Plaintiff is "not a very good builder" and "does not know what he is doing" are so vague that their truthfulness cannot be proven.  At best, these statements are nothing more than hyperbole, i.e., a "figure of speech consisting in exaggerated or extravagant statement, used to express strong feeling or produce strong impression, and not intended to be understood literally." **OXFORD ENGLISH DICTIONARY (2d ed. 1989)**.  Nothing in Hollis' affidavit suggests Brown intended to point out any particular verifiable fact about Plaintiff's skills but instead was simply conveying his general impression of Plaintiff.

### D.  Tortious Interference

The Granite City Defendants argue that Plaintiff cannot prevail on his tortious interference claims because the only relevant event, Dan Brown's alleged

wire fraud, was performed within the scope of governmental duties and therefore nonactionable.

The Court concludes that the Granite City Defendants are not entitled to governmental immunity on Plaintiff's tortious interference claims.  An officer's "official capacity" cannot of course extend to intentional criminal activity.  Since Plaintiff has proffered sufficient evidence of the predicate act mail fraud, which is an intentional crime, *see supra* **Part III.B.1**, he has also sufficiently shown the Granite City Defendants acted outside the scope of their authority in tortiously interfering with his business expectancy.  To the extent any single Granite City Defendant did not exceed his "official capacity" individually, his argument is waived given that the Granite City Defendants have argued only as to themselves collectively.

### E.  Arguments Lacking a Response from Plaintiff

The Granite City Defendants have argued for summary judgment on the following claims: (1) federal and state FOIA (Doc. 158, p. 5-6); (2) federal and state Anti-Trust (Doc. 158, p. 12-18); and (3) Illinois Civil Conspiracy (Doc. 158, p. 18-19).  Plaintiff does not contest these arguments in his response (Doc. 200).  Consequently, the Court understands Plaintiff as having conceded these arguments. *See* **FED. R. CIV. P. 56(e);** *see also United States v. Jones*, **224 F.3d 621, 624 (7th Cir. 2000)(stating "[a]rguments that are not adequately developed or supported are waived")**.

### F.  Statute of Limitations as to State Claims

The Granite City Defendants argue that Plaintiff's state claims, of which the only one remaining is tortious interference, are barred by Illinois' one year statute of limitations for actions on state claims against municipalities and their employees acting in an official capacity (Doc. 158, p. 2).

The Court rejects this argument.  In Illinois, the statute of limitations for actions filed against municipalities and their employees, officers or agents acting in their official capacities is "one year from the *date the injury was received* or *the cause of action accrued.*"   **745 ILCS 10/8-101**; *see **Hermitage Corp. v. Contractors Adjustment Co.**, 166 Ill.2d 72, 77-79 (1995)(noting Illinois' "discovery rule")*.   Here, the operative event giving rise to Plaintiff's tortious interference claim is the phone call of March 27, 2002, from Defendant Brown to financier Kehr.  And while this claim is now found in the amended complaint of June 4, 2004, the claim obviously relates back to the original complaint's date of March 25, 2003, since Plaintiff asserted this claim then as well.  **FED. R. CIV. P. 15(c)**; **Henderson v. Bolanda, 253 F.3d 928, 931 (7th Cir. 2001)**. Consequently, even if the Court assumes that all Granite City Defendants acted in their official capacities, Plaintiff's tortious interference claim was timely filed on March 25, 2003.

### G.  Damages

The Granite City Defendants argue that all of Plaintiff's alleged damages are merely speculative since Plaintiff's "subdivision was never more than a proposal

and . . . he had no commitment from anyone to provide the financial assistance required" (Doc. 158, p. 19).  In response, Plaintiff references his own third affidavit and its attached exhibits (Doc. 200, p. 20).

The Court rejects the Granite City Defendants' arguments.  Contrary to the claim that Plaintiff's project was merely a "proposal," evidence shows that a pre-annexation agreement existed and that some Granite City entities had approved Plaintiff's proposal.  The full effect of the agreement and governmental approvals is unclear from the record, and so a dispute of material fact exists.

Also, the evidence does not support the Granite City Defendants' sweeping, categorical statement that Plaintiff had no commitments from financiers.  First, enough evidence exists to suggest Plaintiff had a partnership with each of his two financiers when submitting proposals concerning the pre-annexation agreement to Granite City's governmental entities.  A partnership is essentially a contractual relationship to which "the principles of contract law fully apply." ***In re Estate of Johnson*, 472 N.E.2d 72, 74-75 (Ill. App. Ct. 1984)**.  Under Illinois law, "the association of 2 or more persons to carry on as co-owners a business for profit forms a partnership, *whether or not the persons intend to from a partnership*." **805 ILCS 206/202 (2004)(emphasis added)**.  A partnership does not require an explicit agreement since statutory provisions will automatically govern the partners' relationship.  **805 ILCS 203/103 (2004)(stating "[t]o the extent the partnership agreement does not otherwise provide, this Act governs relations among the partners and between the partners and the partnership")**.  Second, even if a

23

specific partnership cannot be established, submitted evidence at least suggests Plaintiff had some type of contractual agreement with each of his financiers when trying to persuade Granite City to accept construction proposals and honor the pre-annexation agreement.

The submitted evidence is replete with statements by Balsters and Kehr and other documents suggesting Plaintiff joined with each of his financiers to realize the particular business objective of having Granite City approve their construction proposals and honor the already ratified pre-annexation agreement. While Plaintiff and his financiers might have agreed to create a limited liability corporation at a later time (Doc. 200, Lathrop's Third Affidavit ¶ 43), this does not preclude the existence of an earlier contract or partnership, which is an entity distinct from an LLC. The ultimate point is that the evidence strongly suggests that Plaintiff might have had an existing business relationship with his financiers and that Defendants interfered with that relationship.

The Granite City Defendants' general hearsay objections do not preclude consideration of those portions in Plaintiff's submitted evidence necessary to reach the above conclusion regarding Plaintiff's partnerships and contracts (Doc. 206). A statement is hearsay only if it is "offered in evidence to prove the truth of the matter asserted." **FED. R. EVID. 801(c) & advisory committee's note (stating in the note that "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay")**. Balster's and Kehr's statements are not hearsay but

instead are "verbal acts" to the extent they evidence the formation/creation of a partnership or contract between Plaintiff and each of his financiers.  ***See Echo Acceptance Corp. v. Household Retail Serv., Inc.*, 267 F.3d 1068, 1088 (10th Cir. 2001)(stating that "'utterances by the parties . . . constituting the offer and acceptance which brought the contract into being' qualify as verbal acts")(quoting McCromick on Evidence § 249 (5th ed. 1999)).**

## IV.  Conclusion

The Court **GRANTS in part** and **DENIES in part** the Granite City Defendants' summary judgment motion and supplement (Docs. 158, 181).  The Court **GRANTS** the Granite City Defendants' summary judgment motion as to all of Plaintiff's RICO claims since Plaintiff cannot show that a pattern of racketeering activity occurred or would have occurred.  The Court **GRANTS** the Granite City Defendants' summary judgment motion as to Plaintiff's defamation claims since Dan Brown's statements constitute only opinions.  The Court **DENIES** the Granite City Defendants' summary judgment motion as to Plaintiff's intentional interference claims since Defendants' alleged actions were outside the scope of their authority.  The Court **GRANTS** the Granite City Defendants' summary judgment motion as to Plaintiff's claims under federal and state FOIA, federal and state Anti-Trust laws, and state civil conspiracy law, since Plaintiff's response does not address the Granite City Defendants' arguments on these claims.  The Court **DENIES** the Granite City

Defendants' summary judgment on Plaintiff's state claims for failure to file within the one year statute of limitations since Plaintiff timely filed his original complaint. The Court **DENIES** the Granite City Defendants' summary judgment as to Plaintiff's damages since evidence suggests that Plaintiff's project was more than simply a proposal and that Plaintiff possibly had a partnership or contract with each of his financiers.   The Court **DENIES** the Granite City Defendants' motion to strike portions of Plaintiff's submitted evidence to the extent their motion is discussed above (Doc. 206).  The Court **FINDS as moot** all other remaining arguments in the motion to strike (Doc. 206).

**IT IS SO ORDERED.**

Signed this 25th day of April, 2005.

/s/    David RHerndon
**United States District Judge**

26