**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**STEPHEN LATHROP,**

**Plaintiff,**

**v.**

**JUNEAU & ASSOCIATES, INC. P.C.,**
**JOE JUNEAU, individually and in his**
**official capacity as City Engineer of**
**Granite City, Illinois, ED JUNEAU,**
**CHARLIE JUNEAU, DAN BROWN,**
**individually and in his official**
**capacity as Economic Director of**
**Granite City, Illinois, RONALD SELPH,**
**individually and in his official capacity**
**as Mayor of Granite City, Illinois,**
**MARK SPENGLER, individually and in**
**his official capacity as City Attorney of**
**Granite City, Illinois, GRANITE CITY**
**OF ILLINOIS, and OTHER UNNAMED**
**PERSONS**

**Defendants.**                                              **No. 03-CV-0194-DRH**

<u>**MEMORANDUM AND ORDER**</u>

**HERNDON, District Judge:**

**I.  <u>Introduction</u>**

Before the Court is the summary judgment motion submitted by

Defendants Juneau & Associates, Inc. P.C., Joe Juneau, Ed Juneau, and Charlie

Juneau (collectively, the "Juneau Defendants") (Doc. 185). *Pro se* Plaintiff Stephen

Lathrop brought this action alleging that Defendants wrongfully interfered with a

construction project between himself and Granite City's Aldermen because it

1

conflicted with another construction project in which all named Defendants had a legal or illegal interest (Doc. 109).  The Juneau Defendants seek summary judgment as to Plaintiff's RICO claims as well as his state and federal antitrust claims (Doc. 185).   For the following reasons, the Court **GRANTS** the Juneau Defendants' summary judgment motion (Doc. 185).

## II. <u>Background</u>

Plaintiff Stephen Lathrop filed his original complaint on March 25, 2003.  The Court granted in part and denied in part Defendants' motions to dismiss and/or strike the original complaint (Docs. 65, 66), and Plaintiff then filed an amended complaint after obtaining leave (Doc. 109, Amended Complaint).  The amended complaint alleges that Juneau & Associates and its owners, Joe Juneau, Ed Juneau, and Charlie Juneau, overpriced Granite City for construction projects that were obtained by bribing city officials with kickbacks (Doc. 109 ¶¶ 1-3).  Plaintiff claims that Defendants' kickback scheme injured him when Defendants purposefully undermined his pending Dobrey Slough construction agreement with Granite City because the project conflicted with one of Juneau & Associates' construction projects (*id.*).

The Individual Parties to this suit are as follows:

1. Plaintiff Stephen Lathrop is a contractor in Granite City, Illinois.
2. Defendant Juneau & Associates is a private engineering firm contracted to serve as city engineer for several municipalities.
3. Defendant Joe Juneau is Granite City's civil engineer and an owner of Juneau & Associates.

2

> 4.  Defendants Ed Juneau and Charlie Juneau are owners of Juneau & Associates.
> 5.  Defendant Dan Brown is Economic Advisor for Granite City.
> 6.  Defendant Ronald Selph is Mayor of Granite City.
> 7.  Defendant Mark Spengler is City Attorney for Granite City.

(Doc. 109 ¶¶ 6-14).  The Court will refer to Defendants Juneau & Associates, Joe Juneau, Ed Juneau, and Charlie Juneau collectively as the "Juneau Defendants." The Court will refer to Defendants the City of Granite City, Dan Brown, Ronald Selph, and Mark Spengler collectively as the "Granite City Defendants."

In the 1990s, Plaintiff proposed a construction project that would have provided flood control measures and a housing development for the Dobrey Slough area in Granite City, Illinois (Doc. 109 ¶¶ 31, 38).  During meetings held in 1997 and 1998, Plaintiff met with Alderman Kim Hess and Defendants Dan Brown (Economic Advisor) and Joe Juneau (City Engineer) to discuss the need for implementing his flood control measures for Dobrey Slough (Doc. 109 ¶¶ 38-39).  At some point, Plaintiff also explained that Juneau & Associates' construction project at the nearby DonnaLynne subdivision would worsen Dobrey Slough's flooding problems (Doc. 109 ¶ 40).[1]  Although the amended complaint is unclear on this point, Plaintiff, through his company Ramm Development, Inc., apparently completed a "Pre-Annexation Agreement" with Granite City in January 1998 (Doc. 109 ¶ 90).

In the spring of 2000, Granite City Aldermen held an Economics and

---

[1] The US-Army Corps of Engineers eventually determined that the drainage plan of Juneau & Associates' DonnaLynne project was inadequate and forced Granite City to construct a $1.8 million drainpipe from the DonnaLynne subdivision to Horseshoe Lake (Doc. 109 ¶ 76).

Downtown Planning Committee Meeting at which Defendant Joe Juneau presented the DonnaLynne proposal (Doc. 109 ¶ 39).  Mayor Ronald Selph advised the Aldermen to authorize an agreement with Juneau & Associates (the "DonnaLynne agreement") without the Aldermen ever actually seeing the agreement (Doc. 109 ¶¶ 46, 51).  The Mayor allegedly misrepresented that the project would cost the city only $80,000 which would be repaid within seven years even though the DonnaLynne agreement stipulated that the project would cost the city at least $800,000 which would not be reimbursed (Doc. 109 ¶¶ 46, 51, 52).  In addition, Defendants allegedly circumvented a number of necessary procedural steps by having the Mayor present the DonnaLynne proposal directly to the Aldermen without prior review (Doc. 109 ¶ 50).

In September of 2000, Plaintiff found financier Don Balsters who agreed to partner with Plaintiff and finance Plaintiff's Dobrey Slough project (Doc. 109 ¶ 85).  Plaintiff and Balsters met with Granite City's Economic Committee that same month and made some progress towards city approval of Plaintiff's project (*id.*).  But the day after this meeting Balsters withdrew his support of Plaintiff's plan allegedly due to Defendants Dan Brown and Joe Juneau's misrepresentations that Granite City could neither afford nor support Plaintiff's project (Doc. 109 ¶¶ 86, 87).  Plaintiff claims these misrepresentations were made for the purpose of undermining his project and thereby protecting Defendants' project (Doc. 109 ¶ 88).

In late 2001, Plaintiff found another financier and potential backer in Kent Kehr (Doc. ¶¶ 89-90).  Plaintiff and Kehr met with Granite City's Economic

4

Committee on December 4, 2001, and apparently made significant progress towards city approval of Plaintiff's project, including passage of a resolution requiring the Mayor to honor Plaintiff's "Pre-Annexation Agreement" from January 1998 (Doc. 109 ¶¶ 91-92). On March 19, 2002, Kehr presented to the Economic Committee a written development proposal for Plaintiff's project (Doc. 109 ¶ 92). But on March 26, 2002, Defendant Dan Brown allegedly telephoned and informed Kehr in a rude manner that the Mayor's office would not approve the proposal unless it contained additional information, including the name of the tenant that would be locating at the site (Doc. 109 ¶ 93). The amended complaint does not state whether the additional information noted by Brown was actually required by ordinance or statute. The amended complaint appears to suggest that the alleged conversation led Kehr to withdraw his financial support for Plaintiff's project (Doc. 109 ¶ 94). Plaintiff claims Brown made these representations to Kehr for the purpose of undermining Plaintiff's project and thereby protecting Defendants' project (Doc. 109 ¶ 88).

Beginning on April 9, 2001, Plaintiff began to investigate Juneau & Associates' DonnaLynne project and made requests for certain documents (Doc. 109 ¶¶ 98-99). Although Plaintiff received a copy of the contract agreement establishing Juneau & Associates' DonnaLynne project, he claims he did not receive other requested documents but does not mention what the other requested documents were (Doc. 109 ¶ 99).

On April 16, 2002, Plaintiff and his then attorney addressed the Granite City Finance Committee (Doc. 109 ¶ 101). Plaintiff stated that Defendants had

5

blocked his project in various ways in order to protect their Dobrey Slough project (Doc. 109 ¶ 101).  The Finance Committee then unanimously passed a motion to have Plaintiff and his attorney meet with the Granite City Attorney to work out a settlement (Doc. 109 ¶ 102).

After May 8, 2002, Plaintiff again began to investigate the Defendants' project (Doc. 109 ¶ 106).  Plaintiff claims that City Treasurer Gail Valle, City Clerk Judy Whitaker, Comptroller Greg McCalley, and Defendant City Engineer Joe Juneau denied Plaintiff's request for documents concerning Defendants' DonnaLynne project (Doc. 109 ¶¶ 106-12).  The reason given for each denial was that the documents related to pending litigation (*id.*).

Plaintiff's amended complaint also alleges that the sale of land at 1733-1745 State Street, Granite City, Illinois, on September 19, 2000, from Granite City to eight individuals for the price of $1 in order to lease the land to a non-profit corporation constituted a fraud (Doc. 109 ¶¶ 132-48).  Plaintiff alleges that Dan Brown knew of prior offers for more but recommended the land be sold for $1, to which the Economic Committee consented (Doc. 109 ¶¶ 132-34).  Plaintiff suggests, "This sale warrants further investigation," (Doc. 109 ¶ 132), but gives no explanation of the relation between this land sale and other allegations in Plaintiff's complaint.

Plaintiff's amended complaint asserts the following claims against Defendants (Doc. 109)[2]:

---

[2] The Juneau Defendants assert that this recitation conflicts with that which is contained in an order authored by Magistrate Judge Cohn, see Doc. 175, but the Court disagrees, in that, said

1. RICO violations of **18 U.S.C. § 1962(c)** – premised on predicate acts involving (1) violations of federal laws on bribery, wire fraud, mail fraud, obstruction of justice, and other unlisted matters and (2) violations of state laws on bribery, fraud, defamation, and other unlisted matters (¶¶ 159-64);

2. RICO violations of **18 U.S.C. § 1962(c) and (d)** – premised on the same predicate acts as above (¶¶ 165-70);

3. RICO violations of **18 U.S.C. § 1962(a) and (d)** – premised on the same predicate acts as above (¶¶ 171-74);

4. RICO violations of **18 U.S.C. § 1962(b) and (d)** – premised on the same predicate acts as above plus fraud under 18 U.S.C. § 1342 and "related fraudulent defamatory under U.S.C. §§ 1961(1), 1961(5), and 1962(b)" (¶¶ 175-78);

5. Tortious interference with prospective business relations (¶¶ 179-81);

6. Defamation (¶¶ 179-180);

7. Civil Conspiracy (¶¶ 182-88);

8. Violations of state and federal freedom of information acts (¶¶ 189-91); and

9. Violations of state and federal anti-trust laws (¶¶ 192-205).

In relation to the RICO claims, the amended complaint designates two RICO enterprises: (1) the "Juneau & Associates, Inc. P.C." (also called the "Juneau Enterprise") composed of the Juneau Defendants and (2) the "Juneau–Granite City Engineering Enterprise" composed of all Defendants (Doc. 109 ¶¶ 17-30). The relief sought includes compensatory damages, punitive damages, equitable relief, and attorney's fees and costs (Doc. 109, Prayer for Relief ¶¶ 1-8).

While the Juneau Defendants' forfeited their right to file a summary judgment motion regarding the original complaint (Docs. 133, 153), the Court granted the Juneau Defendants' leave to file a summary judgment motion regarding claims in Plaintiff's subsequently filed amended complaint (Docs. 154, 175). Plaintiff

---

order only sets out causes of action for the purpose of trying to marshal discovery and is not dispositive of the issues. In any event, said order is not controlling in these matters.

never filed an initial response to the motion.  However, on realizing all Defendants'

failures to issue a ***Timms*** notice with their summary judgment motions, the Court

itself issued a notice concerning the requirements for responding to a summary

judgment motion and granted Plaintiff leave to file an additional response (Doc. 197).

Plaintiff subsequently filed a joint response to Defendants' summary judgment

motions along with volumes of transcripts, affidavits, and videotapes (Doc. 200).

### III. <u>Analysis</u>

The Juneau Defendants have filed a summary judgment motion

regarding the claims newly asserted in the amended complaint (Doc. 185).  Similar

to two earlier motions to dismiss (Doc. 4; Doc. 65, p. 7; Doc. 161), the Juneau

Defendants' counsel has again failed to sufficiently reference the Federal Rules of

Civil Procedure.  The malfeasance in the present summary judgment motion is even

more egregious since counsel has failed completely to cite any Federal Rule of Civil

Procedure.  The Court **ADMONISHES** the Juneau Defendants' counsel for her third

failure to state sufficiently the Federal Rules of Civil Procedure upon which she relies

when filing a dispositive motion.  Reference to the applicable rules is especially

necessary when, as here, a motion is directed against a *pro se* party who is

supposedly less learned in the law than the moving counsel.  Furthermore, failure

to cite the applicable rule is alone sufficient to deny a motion. ***See United States***

***v. Jones***, **224 F.3d 621, 624 (7th Cir. 2000)(stating "[a]rguments that are not**

adequately developed or supported are waived"); *Kelly v. U.S. E.P.A.*, 203 F.3d 519, 522 (7th Cir. 2000); LOCAL RULE 7.1(e).

      Nonetheless, the Court will afford the Juneau Defendants' counsel the benefit of assuming that the arguments for summary judgment are based on FED. R. CIV. P. 56, the general rule for summary judgment motions. But to whatever extent counsel's arguments rely on another rule, counsel has forfeited those arguments by failing to inform the Court and *pro se* Plaintiff of the applicable rule. Also, this malfeasance by the Juneau Defendants' counsel constitutes no detriment to *pro se* Plaintiff since the Court has itself issued a *Timms* notice and subsequently extended the time for Plaintiff's response (Doc. 197).

### A.  Summary Judgment Standard

      Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Oats v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant.

***Regensburger v. China Adoption Consultants, Ltd.***, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 255 (1986)). Also, given Plaintiff's *pro se* status, the Court must apply a liberal construction to his pleadings.  ***See Wynn v. Southward***, 251 F.3d 588, 593 (7th Cir. 2001)(citing ***Hishon v. King & Spalding***, 467 U.S. 69 (1984));  ***Mallet v. Wisc. Div. of Vocational Rehab.***, 130 F.3d 1245, 1248 (7th Cir. 1997).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings.  "[P]laintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment."  ***Weeks v. Samsung Heavy Indus. Co., Ltd.***, 126 F.3d 926, 939 (7th Cir. 1997).  Further, Plaintiff's own subjective belief does not create a genuine issue of material fact.  ***Chiaramonte v. Fashion Bed Group, Inc.***, 129 F.3d 391, 401 (7th Cir. 1997). Rather, the non-moving party must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial.  ***Walker v. Shansky***, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing ***Celotex***, 477 U.S. at 324).

Evidence submitted in response to a summary judgment motion "must be competent evidence of a type otherwise admissible at trial.  Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment."  ***Bombard v. Fort Wayne Newspapers, Inc.***, 92 F.3d 560, 562 (7th Cir. 1996); F𝐄𝐃. R. C𝐈𝐕. P. 56(e).

In reviewing a summary judgment motion, the court does not determine the truth of asserted matters but rather decides whether there is a genuine factual issue for trial.  **Anderson, 477 U.S. at 249**.  The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to show a genuine issue of material fact." **Weeks, 126 F.3d at 933 (7th Cir. 1997)(citing Anderson, 477 U.S. at 252)**.  No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." **Anderson, 477 U.S. at 249-50 (citations omitted)**; *accord* **Starzenski v. City of Elkhart, 87 F.3d 872, 880 (7th Cir. 1996); Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994)**.  Though a district court must be considerate in construing a *pro se* litigant's pleadings, "this does not mean that the court, in considering materials filed in opposition to a motion for summary judgment, should overlook the requirement of Federal Rule of Civil Procedure 56(e) that affidavits be made on personal knowledge and set forth facts as would be admissible in evidence." **Reed v. Richards, 1994 WL 259442, *3 (7th Cir. 1994)**.  This is especially true when a *pro se* Plaintiff has received a **Timms** notice setting forth **RULE 56(e)**'s evidentiary requirements.

11

### B.  RICO

#### 1.  Predicate Acts

The Juneau Defendants challenge Plaintiff's alleged predicate acts that support his RICO claims (Doc. 185, p. 3-10).  In response, Plaintiff only argues in support of the following alleged predicate acts: wire/mail fraud (Doc. 200, p. 12-13); bribery (Doc. 200, p. 16); "wetland fraud scheme" (Doc. 200, p. 17); obstruction of justice (Doc. 200, p. 18-19); and defamation (Doc. 200, p. 20).  The Court understands Plaintiff to have conceded Defendants' arguments as to those predicate acts not addressed in Plaintiff's response.  ***See* FED. R. CIV. P. 56(e); *see also United States v. Jones*, 224 F.3d 621, 624 (7th Cir. 2000)(stating "[a]rguments that are not adequately developed or supported are waived").**

First, the Court determines Plaintiff has sufficiently alleged a RICO claim based on the predicate act of wire fraud.  Wire fraud constitutes a "racketeering activity" under RICO.  **18 U.S.C. § 1961(1)**.  As agreed upon by the Parties, to establish wire fraud a plaintiff must show "(1) the defendants' participation in a scheme to defraud; (2) the defendants' intent to defraud; and (3) the defendants' use of the . . . wires in furtherance of the fraudulent scheme."  ***United States v. Ross*, 77 F.3d 1525, 1542 (7th Cir. 1996)**.  Here, Plaintiff meets the first requirement by alleging Defendants participated in a scheme to defraud through which they wrongfully undermined Plaintiff's Dobrey Slough business venture by fraudulently deterring his financier.  Plaintiff complies with the second requirement since he

claims Defendants' fraud was intentional, i.e., specifically intended for the purpose of protecting the DonnaLynne project. Lastly, Plaintiff alleges Dan Brown furthered this scheme by use of the wires, specifically when Brown telephoned Plaintiff's financier Kehr on March 27, 2002, and made allegedly false demands so as to deter Kehr from supporting Plaintiff's project.

The Juneau Defendants make no contention that Brown did not call Kent Kehr on March 27, 2002. Supporting the alleged subject of this conversation is Kent Kehr's letter to the City Counsel, which Defendants do not move to strike (Doc. 200, p. 9)(quoting "Kent Kehr's Letter of March 28, 2002"). In the letter, Kehr claims Brown told him over the phone "that the city did not want to sell the property . . . because the city wanted to control who located on the site." (Doc. 200, p. 9)(quoting "Kent Kehr's Letter of March 28, 2002"). In addition, Plaintiff notes Glenn Hollis' Affidavit which states, "Brown told me words to the effect that he had just knocked the legs out from under Lathrop's project . . . [because] '[they] don't need the competition with DonnaLynne.'" (Doc. 200; Affidavit of Glenn Hollis ¶ 6). While Brown's statement may relate to any earlier encounter with financier Balsters, this statement and the undisputed phone call to Kehr demonstrate sufficient evidence to show a dispute of material fact as to whether the intended scheme to defraud was furthered by Brown's telephone call to Kehr. Despite the Juneau Defendants' objection (Doc. 203, p. 4), the particular quotation from Hollis' affidavit is admissible. First, Hollis' affidavit sets forth personal knowledge as to Brown's statements since he claims he personally heard Brown make this statement. Second,

Brown's statements noted by Kehr and Hollis are exceptions to the hearsay rule since they constitute an admission by a party-opponent under **FEDERAL RULE OF EVIDENCE 801(d)(2)**.

Second, the Court finds Plaintiff has failed to show a dispute of material fact concerning the alleged predicate act of bribery.  Plaintiff points generally to "tendered evidence #23" (a 109-page exhibit) as evidence that in exchange for advancing the DonnaLynne project Defendants Mark Spengler and Joe Juneau received bribes consisting of lots at reduced rates in the DonnaLynne subdivision (Doc. 200, p. 16).  First, it is nonsense to suggest Joe Juneau received a bribe.  While Joe Juneau was susceptible to bribery by virtue of his position as city engineer, he was also the head of the DonnaLynne project (or at least his company was).  To suggest that Joe Juneau received a bribe as an official would mean he bribed himself in attempt to curry favor with himself so as to advance his own project.  Such a suggestion is absurd.  Second, the evidence submitted in Exhibit 23 gives no suggestion of bribery (Doc. 200, Ex. 23). On reviewing this 109-page exhibit, the only documents evidencing sales were memoranda in which Joe Juneau asked Mayor Ronald Selph whether funds for the city and developers could be provided by specified dates.  (Doc. 200, e.g., Ex. 23 "Memorandum of June 21, 2000"). Also, the only relevance these documents have to Mark Spengler is that he was sent copies (Id.).  The documents give no suggestion that Mark Spengler or even Joe Juneau bought land, let alone at a reduced rate.  Furthermore, Mark Spengler's deposition shows that he never in fact bought a lot in the DonnaLynne subdivision.  (Spengler

14

Dep. p. 44-45).  If Plaintiff had some other portion of the 109-page exhibit in mind, he should have noted it specifically.

Third, the Court determines that Plaintiff's reference to the "Wetland Mitigation Fraud Scheme" does not constitute a predicate act on which his RICO claims may be based.  A party may bring a RICO action based only on "racketeering activity."  **18 U.S.C. §§ 1962, 1964(c)**.  "Racketeering activity" is defined as certain listed federal crimes and violations of state laws concerning "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in controlled substance or listed chemical," and listed federal crimes.  **18 U.S.C. § 1861(1)**.  A practice can only be a "racketeering activity" if "it involve[s] one or more of the crimes listed in section 1961(1)."  ***Emery v. American General Finance, Inc.*, 71 F.3d 1343, 1345 (7th Cir. 1995); *Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999)(holding that list of offenses constituting RICO racketeering acts is exhaustive), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000); *see also Titan Int'l, Inc. v. Becker*, 189 F. Supp. 2d 817, 825-26 (C.D. Ill. 2001)(Scott, J.)**.  In this case, the only wrongful act that might be referenced in the "Wetland Fraud Scheme" is the intentional tort of fraud generally (Doc. 109, p. 20-23; Doc. 200, p. 17-18)  While several specific and unique types of fraud may constitute predicate offenses under **section 1961**, e.g., identity fraud, mail fraud, wire fraud, financial institution fraud, etc., the general intentional tort of fraud is not included as a "racketeering activity" in **section 1961(1)**.  **18 U.S.C. §**

1961(1);  *see also Zolfaghari v. Sheikholeslami*, 943 F.2d 451, 453 (4th Cir. 1991)(stating that common law fraud does not constitute a predicate act under § 1961).

Fourth, the Court finds that no evidence supports the existence of "obstruction of justice" as a predicate act.[3]  Although Plaintiff admits to and cites case law contrary to his position, he suggests Defendants' false affidavits filed in *this suit* sufficiently establish obstruction of justice (Doc. 200, p. 18-19).  The Court agrees with the reasoning in Plaintiff's cited case as to why events in the instant action cannot constitute predicate acts in this suit.  *Special Purpose Accounts Receivable  Co-Op Corp. v. Prime One Capital Co., LLC*, 202 F. Supp. 2d 1339, 1351-52 (S.D. Fla. 2002)(Gold, J.).  Furthermore, it would be nonsensical to permit a plaintiff to file a suit so as to create a predicate act on which that same suit might then subsist.  Courts function to administer justice, not to entrap defendants in otherwise nonexistent crimes.

Fifth, Plaintiff's allegations of defamation cannot constitute a predicate offense.  Again, a practice can only be a "racketeering activity" if "it involve[s] one or more of the crimes listed in section 1961(1)."  *Emery v. American General Finance, Inc.*, 71 F.3d 1343, 1345 (7th Cir. 1995).  Defamation is not listed as a

---

[3] The Juneau Defendants seek summary judgment to whatever extent Plaintiff asserts a claim based on obstruction of justice (Doc. 185, p. 12).  The Court understands the amended complaint as raising obstruction of justice only as a predicate act to support Plaintiff's RICO claims, not as a separate cause of action.  Therefore, in rejecting obstruction of justice as a possible predicate act, the Court understands Plaintiff to have no remaining cause of action concerning obstruction of justice.

"racketeering activity" under **section 1961(1)**.

In summary, the only predicate act on which Plaintiff can base his RICO claims is Dan Brown's alleged wire fraud on March 27, 2002.

### 2.  Pattern of Racketeering Activity

In challenging Plaintiff's predicate acts, the Juneau Defendants also argue that Plaintiff cannot prove that any of the alleged acts constituted a RICO violation (Doc. 185, p. 3-10).  While Plaintiff argues in support of each predicate act as noted above, ***see supra* Part.III.B.1**, he fails to show how the predicate acts might then support his RICO claims.

The Court determines that no evidence supports Plaintiff's **§ 1962(c)** RICO claim in Count 1 since nothing can demonstrate that a pattern of racketeering activity occurred.  Section 1962(c) makes it "unlawful for any person employed by or associated with any [RICO] enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." **18 U.S.C. § 1962(c)**.  A "pattern of racketeering activity" requires a showing of "at least two acts of racketeering activity." **18 U.S.C. § 1961(5)**.  Here, Plaintiff has been able to show evidence of only one predicate act, i.e., Brown's alleged wire fraud. ***See supra* Part.III.B.1**. Consequently, Plaintiff has failed to meet **§ 1962(c)**'s requirement of showing that at least two predicate acts occurred.

Additionally, the Court determines that the evidence shows Plaintiff cannot prevail on his RICO claims in Counts 2, 3, and 4, all of which assert **§ 1962(d)** conspiracies.  To properly assert a RICO conspiracy claim under § 1962(d), a plaintiff does not have to prove that a pattern of racketeering activity actually occurred as required under RICO's substantive provisions in **§ 1962(a)–(c)**. *Salinas v. United States*, **522 U.S. 52, 63 (1997)(stating that an overt act does not have to proven for purposes of a RICO conspiracy)**; *Slaney v. Int'l Amateur Athletic Fed'n*, **244 F.3d 580, 600 (7ᵗʰ Cir. 2001)(stating that the target of § 1962(d) is not the actual violation of RICO's other substantive violations)**. However, a plaintiff must still prove that the defendants agreed to "further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Salinas*, **522 U.S. at 65**; *Slaney*, **244 F.3d at 600 (quoting** *Goren v. New Vision Int'l, Inc.*, **156 F.3d 721, 732 (7ᵗʰ Cir. 1998))**.  Therefore, if a plaintiff is to prove a RICO conspiracy which is not based on collection of an unlawful debt, he must show that the defendant agreed to further an endeavor that would result in a "pattern of racketeering activity," or "at least two acts of racketeering activity." **18 U.S.C. § 1962(a)-(c); 18 U.S.C. § 1961(5);** *Slaney*, **244 F.3d at 600**.  Establishing a potential "pattern" requires showing "a combination of qualities or acts forming a consistent or characteristic arrangement." *United States v. Kaye*, **556 F.2d 855, 860 (7ᵗʰ Cir. 1977)(quoting** *United States v. White*, **386 F. Supp. 882, 883-84 (E.D. Wisc. 1974));** *see also Sedima, S.P.R.L. v. Imrex*

18

***Co.*, 473 U.S. 479, 496 n.14 (1985)(suggesting a "pattern" requires a continuity of acts in combination with an interrelationship between those acts)**.  In this case, Plaintiff has not pleaded that Defendants collected an unlawful debt and cannot prove that the Defendants' agreed endeavor, the DonnaLynne subdivision, would have resulted in a substantive RICO violation.  First, since Plaintiff alleges that Defendants' RICO conspiracy was actually effected, Plaintiff should be able to point to actual predicate acts that constitute a pattern of racketeering activity.  However, Plaintiff has attempted and failed to prove that Defendants committed more than the single predicate act of wire fraud.  Second, assuming *arguendo* that portions of Defendants' alleged conspiracy went unexecuted, nothing in Defendants' plan to build the DonnaLynne subdivision suggests that a "pattern of racketeering activity" (or continuous and interrelated racketeering activities) would have resulted from the plan's completion.

In summary, the Court concludes nothing in the evidence shows that a pattern of racketeering activity occurred or would have occurred.  Consequently, the Juneau Defendants are entitled to summary judgment on Plaintiff's RICO claims in Counts 1, 2, 3, and 4.

### C.  State and Federal Antitrust

The Juneau Defendants challenge Plaintiff's state and federal antitrust claims (Doc. 185, p. 12-13).  Plaintiff has offered no argument in response (Doc.

200).   Therefore, the Court understands Plaintiff to have conceded Defendants' arguments as to the federal and state antitrust claims which are not addressed in Plaintiff's response.  *See* **FED. R. CIV. P. 56(e);** *see also United States v. Jones,* **224 F.3d 621, 624 (7th Cir. 2000)(stating "[a]rguments that are not adequately developed or supported are waived").**

## IV.  Conclusion

The Court **GRANTS** the Juneau Defendants' summary judgment motion (Doc. 185).  The Court **GRANTS** the Juneau Defendants' summary judgment motion as to all of Plaintiff's RICO claims since Plaintiff cannot show that a pattern of racketeering activity occurred or would have occurred.  The Court **GRANTS** the Juneau Defendants' summary judgment motion as to Plaintiff's claims under federal and state anti-trust laws since Plaintiff's response does not address the Juneau Defendants' arguments on these points.  Also, the Court **ADMONISHES** the Juneau Defendants' counsel for her third failure to state sufficiently the Federal Rules of Civil Procedure upon which she relies when filing a dispositive motion (a malfeasance remedied in part by the Court's issuance of a *Timms* notice (Doc. 197)).

**IT IS SO ORDERED.**

Signed this 25th day of April, 2005.

/s/     David RHerndon
**United States District Judge**